IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CREDITRON FINANCIAL SERVICES, INC., *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>K2 FINANCIAL, LLC.,<br><br>　　　　　Defendant. | C.A. No. 06-293 Erie<br>Judge McLaughlin |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

　　　This matter is before the Court upon Defendant's Motion for Summary Judgment. For the reasons that follow, the motion is granted.

**I. BACKGROUND**

　　　Plaintiff Creditron Financial Services, Inc. and Plaintiff Creditron Financial Corporation (collectively referred to herein as "Telatron") are Pennsylvania corporations in the business of marketing and funding consolidation loans. Defendant K2 Financial, LLC ("K2") is a Delaware company that also competes in the consolidation loan market. In February, 2003, Telatron entered into an agreement entitled "Student Loan Origination and Marketing Agreement" ("Agreement") with Delaware Marketing Partners, LLC ("DMP"), a Delaware corporation. Its stated purpose was that Telatron and DMP desired "to implement one or more Student Loan Acquisition Programs for the marketing and funding of consolidation loans." (Agreement, ¶ 1). Pursuant to the Agreement, Telatron was responsible for marketing the consolidation loans and DMP was responsible for providing lists of potential borrowers to Telatron. (Agreement, ¶2). The Agreement contained a

1

payment structure, a confidentiality provision, and a non-compete clause. (Agreement, ¶¶ 3-4, 17). The Agreement required Telatron to pay to DMP 28.57% of the gross revenues generated by the issuance of the consolidation loans, less $142,850.00. (Agreement, ¶4).

On or about October, 2003, several of the founders and owners of DMP formed Defendant K2 Financial. It is undisputed that K2 and DMP share several common owners and operators, and that the business purpose behind the formation of K2 was to provide the same services as Telatron.

On January 16, 2004, DMP filed a breach of contract suit against Telatron, contending that Telatron had not paid approximately $3,700,000.00 owed to DMP under the contract. The case was assigned to this Court under the caption <u>Delaware Marketing Partners, LLC v. Telatron Financial Services, Inc.</u>, C.A. No. 04-263-Erie (the "DMP Litigation"). On September 22, 2006, Telatron filed a counterclaim alleging that DMP had breached the Agreement by supplying solicitation lists of decreased quality (Count I). Teletron further alleged that DMP had "secretly conspired, planned, and assisted others to develop and operate a business to compete directly with the Defendants," had "utilized, disclosed and/or revealed confidential and proprietary information of the Defendants," and "had failed to supply to the Defendants the nature and quality of the lists and services which the Plaintiff had promised and agreed to supply." (Count IV)[1] (Telatron Counterclaim, ¶¶ 13-15, 20, 26-27).[2]

On June 25, 2007, United States Magistrate Judge Susan Paradise Baxter recommended that Telatron's counterclaim be dismissed in its entirety. The Magistrate Judge concluded that DMP had not breached the Agreement by providing lists of inferior quality because she found no language in the Agreement requiring DMP to provide lists of a certain length or "usability," or to provide them

---

[1] Telatron's counterclaim raised two additional counts not relevant to the instant action.

[2] The counterclaim was driven by Telatron's contention that DMP had breached the agreement by secretly forming Defendant, K2, in order to compete with Telatron in contravention of the anti-competition clause in the Agreement.

at a particular frequency. (Report and Recommendation, CA No. 04-263, Dkt. #89). On July 20, 2007, this Court adopted that recommendation during an oral hearing:

> [T]he clear agreement, on its face, makes no provision for payment depending upon either the quality or the quantity of the lists that were produced. In short, then, I find that the Plaintiff is entitled to Summary Judgment, as a matter of law, on its contract claim.

(Transcript CA No. 04-263, July 20, 2007, Oral Hearing, p. 50).

The Magistrate Judge also recommended that this Court grant summary judgment as to Telatron's breach of contract claims relative to the disclosure of proprietary information and the purported conspiracy by DMP ownership to develop a competing business.[3] The Magistrate Judge concluded that there was no evidence in the record supporting either of those allegations and recommended that the counterclaim be dismissed in its entirety. (Report and Recommendation, CA No. 04-263, Dkt. #89). This Court adopted that recommendation at the July 20, 2007 hearing. (Transcript CA No. 04-263, July 20, 2007, Oral Hearing; Dkt. #96, Minute Entry).

On November 13, 2006, Telatron filed an action in the Court of Common Pleas of Erie County against K2. On December 13, 2006, K2 removed the action to this court. In the present action, Telatron asserts that K2: "intentionally and wrongfully interfered with the Plaintiffs' existing contractual relationship with DMP," (Count I); "conspired with, facilitated and assisted in DMP's breach of its contractual obligations and duties under the contract with the Plaintiffs," (Count II); and that "Defendant is the alter ego of DMP and, in that capacity, it is liable and responsible for DMP's violations and breaches of it's contract with the Plaintiffs." (Count III). On October 26, 2007, K2 filed a motion for summary judgment contending, *inter alia*, that each of Telatron's claims are barred by the doctrine of collateral estoppel. (Dkt. #23). This matter is ripe for review.

---

[3] The parties to the DMP litigation disagreed as to whether the "conspiracy to develop a competing business" claim should be considered a tort claim or a breach of contract claim. The Magistrate Judge, accordingly, reviewed and independently recommended dismissal on each basis.

## II. STANDARD FOR REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©. In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party. Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita, 475 U.S. at 587).

## III. ANALYSIS

K2 argues that each of Telatron's claims are precluded by the doctrine of collateral estoppel because each was asserted and adjudicated in the DMP litigation. Collateral estoppel, also referred to as issue preclusion, "prevents parties from litigating again the same issues when a court of competent jurisdiction has already adjudicated the issue on its merits." Witkowski v. Welch, 173 F.3d 192, 198 (3rd Cir. 1999). Application of the doctrine of collateral estoppel requires that: "(1) the issue decided in the prior adjudication must be identical with the one presented in the later action; (2) there must have been a final judgment on the merits; (3) the party against whom collateral estoppel is asserted must have been a party or in privity with the party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in question in the prior adjudication." Schroeder v. Acceleration Life Ins. Co.

4

of Pennsylvania, 972 F.2d 41, 45 (3rd Cir. 1992); see also General Electric v. Deutz, 129 F.Supp.2d 776, 785 (W.D. Pa. 2000), *aff'd in part, rev'd in part on other grounds*, 270 F.3d 144 (3rd Cir. 2001).

It is undisputed that Telatron, the party against whom collateral estoppel is being asserted, was a party to the DMP litigation. (See C.A. No. 04-263). It is similarly undisputed that the DMP litigation resulted in a final judgment on the merits. Burlington Northern Railroad v. Hyundai Merchant Marine, 63 F.3d 1227, 1233 n. 8 (3rd Cir. 1995) (noting that a judgment is final if "[t]he issues were genuinely contested, and the court gave no indication that the summary judgment was tentative of likely to be changed."). Moreover, Telatron had a full and fair opportunity to litigate the issues raised in the prior litigation as there was a protracted period of discovery, extensive motion practice, and oral argument on the motions. (C.A. No. 04-263, Dkt. ## 33, 37, 85; Report and Recommendation; Transcript, July 20, 2007). Finally, for the reasons set forth below, we find that the issues adjudicated in the prior litigation are in fact identical to the issues germane to a resolution of Telatron's claims in the present lawsuit.

### A. Tortious Interference with Contractual Relationship

Count One of the Complaint asserts that K2 "intentionally and wrongfully interfered with the Plaintiffs' existing contractual relationship with DMP." (Complaint, ¶18). Relative to this claim, Telatron alleges that K2 interfered with the quality of the lists provided by DMP to Telatron, induced DMP to divulge proprietary information, and caused DMP to breach a covenant not to compete.

In evaluating tortious interference claims, the Pennsylvania Supreme Court has explicitly adopted § 766 of the Restatement (Second) of Torts:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

Restatement (Second) of Torts § 766 (1979).  See Adler, Barish, Daniels, Levin and Creskoff v. Epstein, 393 A.2d 1175, 1181-83 (Pa. 1978), cert. denied, 442 U.S. 907 (1979); Nathanson v. Medical College of Pennsylvania, 926 F.2d 1368,1388 (3rd Cir. 1991).  Thus, in order to prevail on a claim for tortious interference with an existing contractual relationship, a Plaintiff must demonstrate the following four factors by a preponderance of the evidence: (1) there was an existing contractual relationship between the plaintiff and a third party; (2) the defendant intended to interfere with that contract by inducing a breach or otherwise causing nonperformance; (3) the defendant's actions were not privileged or justified; and (4) the plaintiff suffered pecuniary damages as a result of the breach of contract.  Gianacopoulos v. MOS Design, Inc., 2008 WL 1774094, *4 (M.D. Pa. 2008) (citing Restatement (Second) of Torts § 766; Nathanson, 926 F.2d at 1388).  As stated by the Pennsylvania Supreme Court:

> The elements of this tort of inducing breach of contract or refusal to deal, which must be averred in the complaint, are set forth in the Restatement, Torts, s 766, which says, '. . . one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby'. In other words, the actor must act (1) for the purpose of causing this specific type of harm to the plaintiff, (2) such act must be unprivileged, and (3) the harm must actually result."

Adler, Barish, 393 A.2d at 1183 (quoting Bird v. Philadelphia Elec. Co., 167 A.2d 472, 474 (Pa. 1960)).  Thus, it is axiomatic that a successful claim exists only where the defendant's conduct results in the failure to perform a contract or an impairment of the contract resulting in pecuniary damages.  Gianacopoulos, 2008 WL at *4; Adler, Barish, 393 A.2d at 1183; Nathanson, 926 F.2d at 1388.

In her Report and Recommendation in the DMP litigation, the Magistrate Judge recommended that this Court enter a final determination that DMP had not breached its contract with Telatron. (CA No. 04-263, Dkt. #89, Report and Recommendation, pp. 23-24).  Specifically, the Magistrate Judge concluded that Telatron had not bargained for lists of a particular quantity or

quality; therefore, any diminution in the value of the lists provided by DMP did not result in a breach of the contract or cognizable legal harm. Id. Moreover, the Magistrate Judge concluded that no evidence supported Telatron's contention that DMP had violated either the confidentiality provision or the non-compete clause of the Agreement.[4] This Court then entered a final judgment adopting the Magistrate Judge's recommendations and dismissing Telatron's counterclaim. (CA No. 04-263, Transcript, July 20, 2007 Hearing). Thus, the doctrine of collateral estoppel prevents Telatron from demonstrating that any legally cognizable harm occurred as a result of the allegedly tortious conduct.

### B. Breach of Contract/Conspiracy to Breach Contract

---

[4] Plaintiffs attempts to avoid the preclusive effect of the collateral estoppel doctrine by attacking the Magistrate Judge's analysis in the Report and Recommendation in the DMP litigation:

> In the civil action filed by DMP, the magistrate judge granted DMP's motion for summary judgment on Telatron's counterclaim, which counterclaim included causes of action based upon DMP's breach of the confidentiality provision and non-compete provision of the DMP contract. The Magistrate Judge did not rule on the merits of [Telatron's claims in the DMP litigation] other than to state, incorrectly, that Telatron had not come forward with evidence supporting these causes of action. Telatron had filed documentary evidence in support of its position. However, the Magistrate Judge overlooked and therefore did not comment on the evidence of record which was relied on by Telatron.

(Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment, Dkt. 33, p. 18). However, the very purpose of the doctrine of collateral estoppel is to "prevent[] parties from litigating again the same issues when a court of competent jurisdiction has already adjudicated the issue on its merits." Witkowski, 173 F.3d at 198. Plaintiff is not entitled to a second bite at that legal apple.

Plaintiffs' second claim is that K2 "conspired with, facilitated and assisted in DMP's breach of its contractual obligations and duties under the contract with the Plaintiffs." (Complaint, ¶21). Specifically, Plaintiff argues that the creation of K2 by the owners of DMP caused a decrease in the quality of the solicitation lists, constituted a breach of the non-compete provision of the Agreement, and resulted in the disclosure of proprietary information protected by a non-disclosure clause.

In the previous litigation, Telatron's counterclaim alleged identical claims against DMP:

> Plaintiff secretly conspired, planned and assisted others to develop and operate a business to compete directly with the Defendants.
>
> As part of this conspiracy, the Plaintiff utilized, disclosed and/or revealed confidential and proprietary information of the Defendants and the Plaintiff failed to supply to the Defendants the nature and quality of the lists and services which the Plaintiff had promised and agreed to supply.

(C.A. No. 04-263, Complaint, ¶¶ 26-27).

The Magistrate Judge, during the DMP litigation, addressed each of these issues and concluded that there was no evidence that a breach of any contractual obligation had occurred:

> Plaintiff argues for the first time that there is no evidence in the record to support the factual allegations of all of the counterclaims. In support of that argument, Plaintiff points to the November 2006 deposition testimony of Defendants' employee DeSanti-Boehm. DeSanti- Boehm admits that Defendants do not know of any confidential or propriety information that Plaintiff disclosed or provided to others:
>
>> Q: Other than speculation and assumptions, do you have any direct evidence that would support the statement in the Answer to Interrogatories that there was wrongful use of Defendants' business and proprietary information?
>> A: At this time, no. I think we're still working that out.
>> * * *
>> Q: What specific evidence do you have that lists procured for purposes of telemarketing and/or mail campaigns, and the analysis of these lists, and the selection criteria used to secure lists was disclosed by the Plaintiff to others?
>> A. I think we're still trying to work that out. We're curious about the date of the last list that was provided to us and information we had gleaned from other sources that other lists might have been

> provided elsewhere. So I think that we're still
> trying to find the information on that.
> Q: Is the answer to my question, none?
> A: None as of right now, correct.
>
> Document # 86-9, pages 23, 25. Further, Plaintiff argues that in her deposition testimony DeSanti-Boehm failed to identify any evidence to support its counterclaim that Plaintiff conspired to develop a business to compete with Defendants. Document # 86-9, pages 48-51.
>
> Following the introduction of evidence by a moving party, the burden then shifts to the nonmoving party to show specific facts in evidence to prove the elements essential to his claim. <u>Celotex</u>, 477 U.S. at 322. Defendants have not responded to this argument as they must in order to defeat a motion for summary judgment under Rule 56. At this advanced stage of the proceedings in the face of a motion for summary judgment, the non-movant must come forward with more than speculation and suspicion that the moving party violated the covenant not to compete or misappropriated proprietary information. Accordingly, the motion for summary judgment as to the remaining portions of Defendants' counterclaims should be granted.

(CA No. 04-263, Dkt. #89, Report and Recommendation, pp. 23-24). This Court adopted that recommendation at an oral hearing on the Magistrate Judge's Report. (CA No. 04-263, Transcript, July 20, 2007 Hearing, p. 45) ("After careful consideration of the written objections, as well as oral argument, I adopt the Magistrate Judge's Report and Recommendation . . ."). These claims, accordingly, are subject to collateral estoppel.

### C. Alter Ego Theory

Plaintiffs' final claim is that K2 was the legal "alter ego" of DMP and, therefore, "is liable and responsible for DMP's violations and breaches of its contract with the Plaintiffs." (Complaint, ¶25). However, given the Court's finding in the DMP litigation discussed more fully above that DMP had not breached any of its contractual obligations to Telatron, Telatron's "alter ego" claim must fail as well.

### IV. CONCLUSION

For the reasons stated above, K2 Financial's Motion for Summary Judgment is GRANTED.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CREDITRON FINANCIAL SERVICES, INC., *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. 06-293 Erie<br>Judge McLaughlin |
| K2 FINANCIAL, LLC., | ) ) ) ) | |
| Defendant. | ) | |

## **ORDER**

AND NOW, this 14th day of May, 2008, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED. Judgment is hereby entered in favor of Defendant and against Plaintiffs.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ___